# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

EDUARDO ANTHONY CRUZ,

            Petitioner,

   v.

MIKE KNOWLES, WARDEN,

           Respondent.

_____/

CV F   04-5080 REC DLB HC

FINDINGS AND RECOMMENDATIONS
REGARDING PETITION FOR WRIT OF
HABEAS CORPUS

[Doc. 10]

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY[1]

By complaint filed on July 12, 2000, in the Kern County Superior Court, Petitioner was charged with a violation of California Health and Safety Code sections 11379(a) (count 1), 11378 (count 2), and 11377(a) (count 3). It was further alleged that Petitioner previously suffered two "strikes" within the meaning of California Penal Code sections 667(c)-(j) and 1170.12(a)-(e).

On October 10, 2000, Petitioner waived formal arraignment and entered a plea of no contest to Count 2 - possession for sale of methamphetamine and admitted the two "strike" priors. (CT 24-25.)

On November 20, 2000, Petitioner was sentenced to 25 years to life.

Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer.

1

1  Appellate District.  The Court of Appeal affirmed the conviction and sentence on August 6,

2  2002.  (Exhibit E, attached to Answer.)

3      Petitioner filed a petition for review with the California Supreme Court.  The petition was

4  denied on November 20, 2002.   (Exhibit G, attached to Answer.)

5      Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court,

6  which was denied on August 14, 2001.  (Exhibit H, attached to Answer.)

7      On January 10, 2002, Petitioner filed a petition for writ of habeas corpus in the Fifth

8  District Court of Appeal, which was denied on February 21, 2002.  (Exhibit H, attached to

9  Answer.)

10  Petitioner filed a petition for writ of habeas corpus with the California Supreme Court on

11  October 4, 2002.  The petition was denied on May 21, 2003.

12  Petitioner filed the instant petition for writ of habeas corpus on December 22, 2003.

13  Respondent filed an answer on August 3, 2004, and Petitioner filed a traverse on November 15,

14  2004.

15  STATEMENT OF FACTS[2]

16  Police seized 221.7 grams of methamphetamine from a car that Eduardo Anthony Cruz

17  was driving and 13.05 grams of methamphetamine from a home that he and his fiancee Consuelo

18  Martinez were sharing.  The district attorney filed charges against both.

19      Cruz and Martinez agreed to a package plea that conditioned each plea on
20  the other plea remaining in effect.  Cruz pled no contest to possession for sale of
   methamphetamine (Health & Saf. Code, § 11378), admitted two strike priors
21  (Pen. Code, §§ 667, subds. (b-(j), 1170.12, subds. (a)-(e)), and agreed to a
   maximum prison sentence of 25 years to life.  Martinez pled no contest to
22  accessory after the fact (Pen. Code, § 32) and agreed to a maximum prison
   sentence of three years.  At the probation and sentencing hearing for Cruz, the
23  court declined to strike his strike priors and imposed a prison sentence of 25 years
   to life.  (footnote omitted).

24  (Exhibit E, at 2.)

25  ///

27  [2] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth
   Appellate District appearing as Exhibit E, of the Answer to the Petition for Writ of Habeas Corpus.  The Court finds
28  the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

2

1
DISCUSSION

2 A.    Jurisdiction

3        Relief by way of a petition for writ of habeas corpus extends to a person in custody

4 pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

5 or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

6 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

7 violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

8 out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28

9 U.S.C. § 2254(a); 2241(d).

10       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

11 of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

12 enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), cert. denied, 522 U.S.

13 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting

14 Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct.

15 1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

16 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

17 petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

18 B.    Standard of Review

19       This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

20 custody pursuant to the judgment of a State court only on the ground that he is in custody in

21 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

22       The AEDPA altered the standard of review that a federal habeas court must apply with

23 respect to a state prisoner's claim that was adjudicated on the merits in state court.  Williams v.

24 Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

25 will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

26 to, or involved an unreasonable application of, clearly established Federal law, as determined by

27 the Supreme Court of the United States;" or "resulted in a decision that was based on an

28 unreasonable determination of the facts in light of the evidence presented in the State Court

3

proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade,</u>123 S.Ct.1166 (2003) (disapproving of

the Ninth Circuit's approach in <u>Van Tran v. Lindsey</u>, 212 F.3d 1143 (9th Cir. 2000)); <u>Williams v.</u>

<u>Taylor</u>, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." <u>Lockyer</u>, at 1175 (citations

omitted). "Rather, that application must be objectively unreasonable." <u>Id.</u> (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are

constitutionally protected, <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

(1983); <u>Harris v. Nelson</u>, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

criminal conviction is the primary method for a petitioner to challenge that conviction. <u>Brecht v.</u>

<u>Abrahamson</u>, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's

factual determinations must be presumed correct, and the federal court must accept all factual

findings made by the state court unless the petitioner can rebut "the presumption of correctness

by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115

S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>,

110 F.3d 1380, 1388 (9th Cir. 1997).

C.    <u>Right to Conflict Free Counsel Under Sixth Amendment</u>

Petitioner contends that his Sixth Amendment rights were violated when the trial court

allowed Petitioner to enter a plea without an express waiver of an actual conflict by "stand-in"

counsel. Petitioner asserts that since "stand-in" counsel also represented his co-defendant

(fiancee) in this case, counsel had a conflict of interest representing both parties.

"In order to establish a violation of the Sixth Amendment [based on a conflict of interest],

a defendant who raised no objection at trial must demonstrate that an actual conflict of interest

adversely affected his lawyer's performance." <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980). If

this standard is met, prejudice is presumed. <u>Mickens v. Taylor</u>, 535 U.S. 162, 166 (2002);

<u>United States v. Rodrigues</u>, 347 F.3d 818, 823 (9th Cir. 2003). In <u>United States v. Shwayder</u>, the

Ninth Circuit held that to prove an adverse effect, the defendant must show that "counsel was

influenced in his basic strategic decisions" by loyalty to another client or former client. 312 F.3d

1109, 1118 (9th Cir. 2002). Thus, to show adverse effect, a defendant need not demonstrate

prejudice- -that the outcome of his trial would have been different but for the conflict- -but only

"that some plausible alternative defense strategy or tactic might have been pursued but was not

and that the alternative defense was inherently in conflict with or not undertaken due to the

attorney's other loyalties or interests." United States v. Stantini, 85 F.3d 9, 16 (2d Cir. 1996)

(citation and internal quotation marks omitted).

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held:

> [Petitioner] cites nothing in the record to show that absence of his counsel
> from – or presence of Martinez's counsel at – proceedings at which he agreed to
> the package plea prejudiced him. To establish a Sixth Amendment violation, an
> accused who raises no objection at trial must demonstrate not only an actual
> conflict of interest but also an adverse effect on counsel's performance. (*Cuyler v.
> Sullivan* (1980) 446 U.S. 335, 348.) [Petitioner] cites nothing in the record to
> meet his burden of proof that an actual conflict of interest had an adverse effect on
> the performance of either his counsel or Martinez's counsel with regard to the
> package plea agreement.

(Exhibit E, at 4-5.)

Petitioner contends that an actual conflict existed because the plea was a "package" deal,

if either his fiancee or Petitioner did not agree, the deal for the other would be withdrawn.

Petitioner contends as stand-in counsel represented Petitioner's fiancee his co-defendant, it was

not advantageous for counsel to seek a better deal or prevent Petitioner from pleading guilty.

Petitioner has not demonstrated that the representation by stand-in counsel at the plea hearing

had an adverse effect on his performance.

Initially, the Court notes that at the beginning of the change of plea hearing, on October 4,

2000, the following occurred:

> THE COURT: . . . Let's start. Let's do them both together. You're
> standing in for Mr. Torres?
> MR. BELL: Yes.
> THE COURT: And do you agree with that, [Petitioner]?
> [PETITIONER]: Yes, your Honor.
> THE COURT: Okay.

(CT 19.)

Petitioner's benefit of the plea bargain was to admit the two prior strikes with leave to file

1  a *Romero* motion to strike one of the priors, with exposure of a 25 to year life sentence.

2  Petitioner pled to Count 2 and admitted the two prior strike convictions, but claims he was told

3  by his attorney that he would receive a six-year term because one of the strikes would be stricken.

4      As Petitioner's own declaration demonstrates, Petitioner's retained counsel, Mr. Torres,

5  was present on October 4, 2000, at the plea hearing before the matter was called for hearing.

6  Retained counsel discussed with him the plea deal, which included a motion to strike one of the

7  prior convictions.  (Exhibit A, attached to Exhibit H, of Respondent's Answer, at 1.)  In that

8  situation, Petitioner's sentence would be six years.  (Id.)

9      The record demonstrates that Petitioner was fully aware that the six-year sentence was

10  dependent upon the trial court striking one of the prior convictions and Petitioner was fully aware

11  and agreed that the maximum exposure was a 25 year to life sentence.  Stand-in counsel by

12  Petitioner's own statements, advised nothing more than what his own retained counsel had

13  already advised and would have advised, if he had been present at the plea hearing.  Petitioner's

14  claim that stand-in counsel withheld information that Petitioner would throw himself at the

15  mercy of the sentencing court, is belied by the trial court's advisement at the plea hearing.

16      At the time of taking Petitioner's plea, the trial court specifically stated the following:

17      THE COURT: Mr. Cruz - - what is the maximum term on this offense?
        [PROSECUTOR]: 25 - - you mean 25 to life or 16, 2, 3, on the 11378? It's
18  16, 2, 3 on the methamphetamine, the 11378, and he has two strike priors.
        THE COURT: Well, all right.  That's Count 2?
19      [PROSECUTOR]: Yes.  And People were going to amend the two strike
    priors showing in Count 1.  They're the same.
20      THE COURT: So it's 25 to life?
        [PROSECUTOR]: Yes.
21      THE COURT: You understand that that's a sentencing range?
        (Whereupon, an off-the-record discussion was held between counsel and
22  the [Petitioner].)
        [PROSECUTOR]: Judge Gildner said he would listen to all options that
23  the defense attorneys want to present.
        THE COURT: All right.  But that can be the maximum, plus 25, 000-
24  dollar fine, restitution with a minimum of 250, and loss of driver's license.
        Do you understand that, sir?
25      [PETITIONER]: Yes, your Honor.

26  (CT 21-22.)

27      Additionally, Petitioner acknowledged that he had discussed the plea and its

28

6

1   consequences with his attorney (CT 23), no promises had been made other than what was stated

2   in the record in order to get Petitioner to pled guilty (CT 24), and no threats were made to get

3   him to enter a plea of guilty.  (CT 24.)

4        As Respondent submits, contrary to Petitioner's assertion otherwise, Mr. Bell never

5   "substituted in" as Petitioner's attorney.  The only role played by attorney Bell during the hearing

6   was to stipulate that Judge Pfister need not be the sentencing judge and that there was a factual

7   basis for the plea (CT 23) and a finding of guilt (CT 25).  Although from a review of the

8   transcript it appears that Petitioner conferred with Mr. Bell twice during the hearing, the plea

9   bargain had already been negotiated by Petitioner's counsel, and based on Petitioner's own

10  assertions in his declaration, Mr. Bell advised nothing different than what Mr. Torres had already

11  advised Petitioner.  Further, at no time did Petitioner raise or voice any objection on the record to

12  the trial court's advisement that the maximum sentence that could be imposed was 25 years to

13  life.

14       Further, Petitioner's claim that the trial court did not disclose the conflict of interest of

15  stand-in counsel, is without merit.  Petitioner freely agreed to Mr. Bell's representation.  The

16  failure of a court to make an inquiry into whether a conflict exists does not reduce Petitioner's

17  burden to both prove that an actual conflict existed and that the conflict adversely affected his

18  counsel's performance.  Mickens v. Taylor, 535 U.S. at 173-174.

19       The Court of Appeal cited and applied the appropriate standard of review and reasonably

20  concluded that there was no actual conflict that had an adverse effect on the performance of

21  either counsel.  As the record demonstrates, the Court of Appeal correctly determined that

22  Petitioner was not denied his constitutional right to conflict-free counsel.  The record shows that

23  the Court of Appeal's rejection of this claim was neither contrary to nor an unreasonable

24  application of Supreme Court precedent.

25  D.   Cruel and Unusual Punishment

26       Petitioner contends that his sentence of 25 years to life is cruel and unusual punishment in

27  violation of the Eighth Amendment.

28

1        1.    Procedural Default

2        Respondent initially argues that this claim is procedurally defaulted because the state

3    appellate court found that it was deemed waived by failing to raise the claim at the trial court

4    level.

5        Federal courts "will not review a question of federal law decided by a state court if the

6    decision of that court rests on a state law ground that is independent of the federal question and

7    adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546

8    (1991); LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001).  If the court finds an independent

9    and adequate state procedural ground, "federal habeas review is barred unless the prisoner can

10   demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure

11   to consider the claims will result in a fundamental miscarriage of justice."  Noltie v. Peterson, 9

12   F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750; Park v. California, 202 F.3d 1146,

13   1150 (9th Cir. 2000).

14       "For a state procedural rule to be 'independent,' the state law basis for the decision must

15   not be interwoven with federal law."  LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001)

16   (citing Michigan v. Long, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469 (1983)); Morales v. Calderon,

17   85 F.3d 1387, 1393 (9th Cir. 1996) ("Federal habeas review is not barred if the state decision

18   'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'" (quoting

19   Coleman, 501 U.S. at 735, 111 S.Ct. 2456)).  "A state law is so interwoven if 'the state has made

20   application of the procedural bar depend on an antecedent ruling on federal law [such as] the

21   determination of whether federal constitutional error has been committed.'"  Park, 202 F.3d at

22   1152 (quoting Ake v. Oklahoma, 470 U.S. 68, 75, 105 S.Ct. 1087 (1985)).

23       To be deemed adequate, the state law ground for decision must be well-established and

24   consistently applied.  Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural

25   rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly

26   followed' at the time it was applied by the state court.")(quoting Ford v. Georgia, 498 U.S. 411,

27   424, 111 S.Ct. 850 (1991)).  Although a state court's exercise of judicial discretion will not

28

1   necessarily render a rule inadequate, the discretion must entail "'the exercise of judgment

2   according to standards that, at least over time, can become known and understood within

3   reasonable operating limits.'" Id. at 377 (quoting Morales, 85 F.3d at 1392).

4          In Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003), the Ninth Circuit held that

5   although the California untimeliness rule as expressed in In Re Robbins was an independent state

6   procedural ground, the Court could not conclude that it was an adequate state procedural ground

7   on the basis of the record before it. The Ninth Circuit remanded the case to the district court to

8   determine the issue of adequacy (whether the timeliness bar was sufficiently well-established and

9   consistently applied at the time the default occurred). Id. While the ultimate burden of proving

10  adequacy rests with the respondent, the petitioner must place the state's affirmative defense of

11  independent and adequate state procedural grounds at issue "by asserting specific factual

12  allegations that demonstrate the inadequacy of the state procedure." Id.

13         The Ninth Circuit has held that California's contemporaneous objection rule, which

14  requires objection at the time of trial to preserve an issue for appeal, is an adequate procedural

15  bar. The contemporaneous objection rule is applied independent of federal law. See Vansickel

16  v. White, 166 F.3d 953, 957-58 (9th Cir. 1999)(recognizing and applying California's

17  contemporaneous objection rule in affirming denial of a federal petition on the ground of

18  procedural default); Rich v. Calderon, 187 F.3d 1064, 1069-70 (9th Cir. 1999)("We may not

19  review his six other prosecutorial misconduct claims because Rich procedurally defaulted by

20  failing to make contemporaneous objections, and the California court consequently invoked a

21  procedural bar to their consideration, the validity of which Rich has failed to overcome); Bonin

22  v. Calderon, 59 F.3d 815, 842-43 (9th Cir. 1995)(sustaining the state court's finding of procedural

23  default where defendant failed to make any objection at trial); Nevius v. Sumner, 852 F.2d 463,

24  470 (9th Cir. 1988) ("Errors at trial that are not preserved by contemporaneous objection and

25  subsequent appeal to the state supreme court are barred in a collateral habeas corpus review,

26  unless the petitioner can show cause and prejudice"); Hines v. Enomoto, 658 F.2d 667, 673 (9th

27  Cir. 1981), reversed on other grounds in Ross v. Oklahoma, 487 U.S. 81 (1988). California

28

9

1  courts have consistently applied the contemporaneous objection rule. <u>Melendez v. Pliler</u>, 288

2  F.3d 1120, 1125 (9th Cir. 2002)("We held more than twenty years ago that the rule is consistently

3  applied when a party has failed to make any objection to the admission of evidence."(citing

4  <u>Garrison v. McCarthy</u>, 653 F.2d 374, 377 (9th Cir. 1981); <u>Vanisckel v. White</u>, 166 F.3d at 957-

5  58; <u>Bonin v. Calderon</u>, 59 F.3d at 842-43.

6       Thus, here the Court of Appeal's application of California's contemporaneous objection

7  rule precludes federal review of Petitioner's constitutional challenge under the Eighth

8  Amendment's Cruel and Unusual Punishment Clause.

9       In his traverse, Petitioner contends that his claim deals with a fundamental constitutional

10 right and the claim therefore cannot be deemed waived.  Further, Petitioner contends that the

11 basis of the cruel and unusual punishment claim was presented to the trial court in the <u>Romero</u>

12 motion to strike a prior conviction.  This is an insufficient showing of cause and prejudice or that

13 a fundamental miscarriage of justice will result should the Court not consider the merits of the

14 claim.[3]  However, for the reasons explained below, the Court will alternatively review the merits

15 of the claim.

16       2.    <u>Substantive Merits of Claim</u>

17       As the Court of Appeal reviewed the claim that counsel was ineffective for failing to

18 object at trial, this Court too will review that claim.[4]

19       A criminal sentence that is not proportionate to the crime for which a defendant is

20 convicted may indeed violate the Eighth Amendment.  The Supreme Court recently decided two

21

22       [3] The Court notes that the fundamental constitutional error is an exception to the application of a <u>In re
Dixon</u> bar.  Ex Parte Dixon, 41 Cal.2d 756 (1953).  Dixon can bar federal review where the claimed errors could

23 have been, but were not raised in a habeas petition on direct appeal from conviction, unless the claims fall within an
exception to the rule.  <u>Dixon</u>, 41 Cal.2d 756

24            a.    Fundamental constitutional error;
            b.    Lack of fundamental jurisdiction by the trial court over petitioner;

25            c.    The trial court's acting in excess of jurisdiction; and
            d.    An intervening change in the law.

26

27       [4] A determination of whether counsel was ineffective in failing to raise the claim that Petitioner's sentence
was cruel and unusual, necessarily requires a determination of the merits of Petitioner's claim under the Eighth

28 Amendment.

cases which discuss the clearly established federal law applicable to Eighth Amendment cruel and unusual punishment claims.  See Ewing v. California, 123 S.Ct. 1179 (2003); Lockyer v. Andrade, 123 S.Ct. 1166 (2003).

In Andrade, the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years.  Id. at 1173. Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow."  Id.

The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  Id.    The Court analyzed Andrade's sentence under Rummel v. Estelle, 445 U.S. 263 (1980), Solem v. Helm, 463 U.S. 277 (1983) and Harmelin v. Michigan, 501 U.S. 957 (1991), and held that the state court "did not confron[t] a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrive at a result different from our precedent."  Id.  at 1173-1174.  Using section 2254(d)(1)'s "unreasonable application" clause, the Court also held that it was not objectively unreasonable for the California Court of Appeal to conclude that the contours of the gross disproportionality principle permitted an affirmance of Andrade's Three Strikes sentence.  Id. at 1175.

In Ewing, the Supreme Court again reviewed the constitutionality of a sentence of 25 years to life for stealing three golf clubs.  After reviewing the Court's Eighth Amendment jurisprudence, the Court chose to adopt Justice Kennedy' view that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

Ewing, at 1186-1187.

In conducting a proportionality review of Ewing's sentence, the Court stated, "[i]n

11

weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." Id. at 1189-1190.  The Court noted that "any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." Id. at 1190.  The Court recognized the state's interest in dealing "in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." Id., *citing* Rummel v. Estelle, 445 U.S. 263, 276 (1980).  Accordingly, proportionality review must take this interest into account. Id.  The Court held that Ewing's sentence of 25 years to life was justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by Ewing's long, serious criminal record. Id.

    In reviewing Petitioner's claim, this Court will begin with a brief overview of the Eighth Amendment jurisprudence and the proportionality standard which existed at the time of Petitioner's sentencing.  In Rummel, the Court upheld a life sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years. Rummel, 445 U.S. at 266.  However, because he had two prior felony convictions (for fraudulent use of a credit card and passing a forged check), and had served two prior prison terms, the prosecution chose to proceed under the state's recidivist statute, which carried a life sentence. Id.  The Supreme Court held that Rummel's sentence of life imprisonment *with* the possibility of parole did not violate the Eighth Amendment. Id. at 265-266 (emphasis added).  The Court noted that Rummel had suffered two separate convictions and terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the statute for "petty" offenders. Id. at 278-81.

    Three years later, the Supreme Court set forth the criteria for finding a sentence to be cruel and unusual punishment under the Federal Constitution and affirmed a decision of the Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of parole for a seven-time nonviolent felony recidivist. Solem v. Helm, 463 U.S. 277 (1983).  Defining a three-part proportionality criteria, the Court concluded that Solem's sentence was

grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in light of his prior six nonviolent felony convictions: three for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for driving while intoxicated. Id. at 279-81.  The Court emphasized that Solem's life sentence was far more severe than the sentence it had considered in Rummel, because Rummel was likely to be eligible for parole in twelve years, while Solem was given no possibility of parole at all.  Id.

In Harmelin, the defendant received a mandatory sentence of life in prison *without* the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense. 501 U.S. 957 (1991)(emphasis added).  The Supreme Court upheld the sentence, with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment.  Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review.  Justice Kennedy, joined by Justices O'Connor and Souter, stated that a noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime, but concluded that courts need not examine the second and third factors of intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  Id. at 1005.

The majority of the justices in the Harmelin Court agreed that outside capital punishment, deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of objective guidelines for terms of imprisonment.  501 U.S. at 964.  The threshold for such an inference of disproportionality is high.  See id. at 1001 (Kennedy, J. concurring).  Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, the sentence will not be considered cruel and unusual punishment under the Eighth Amendment. United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

The Harmelin Court concluded that the defendant's sentence did not meet the threshold factor of "gross disproportionality."  Justice Kennedy stressed the serious nature of Harmelin's offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively minor, nonviolent crime at issue in Solem."  Harmelin, 501 U.S. at 1002.  Justice Kennedy

further noted that the "possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" and that the quantity of cocaine possessed by Harmelin had a potential yield of between 32,500 and 65,000 doses. Id.

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held in relevant part:

> [Petitioner] acknowledges his "history of drug use" but argues there is "no connection between his current drug use and his prior violent behavior." We disagree. First, his current felony is not one of use but of possession for sale. Second, his strike priors were for violent crimes, kidnapping and first degree robbery. (Pen. Code, §§ 207, subd. (a), 212.5, subd. (a), 667, subds. (b)-(j), 1170.12, subds. (a)-(e). Third, studies show a direct nexus between illegal drugs and crimes of violence. [citation]. Fourth, he committed his current felony less than four years after his discharge from parole on the strike priors. Fifth, possession for sale of methamphetamine, a criminal commodity for which demand is constant, draws others into the vortex of the underworld, induces others to commit crime, and impairs the public health and safety. In short, contrary to his argument, we see a strong connection between his current felony and his strike priors. . . .[¶] In light of the seriousness of his current felony, the seriousness of his strike priors, and his failure to reform, we hold that his sentence is neither cruel and unusual nor cruel or unusual. [citations omitted].

(Exhibit E, at 6-7.)

In the instant case, Petitioner pled guilty of felony possession of methamphetamine for sale. Petitioner's offense is either on the same level or more serious than the underlying offenses in the cases discussed above. Petitioner's crime is more serious than Rummel's crime of obtaining $120.75 by false pretenses. Rummel, 445 U.S. at 266. His crime is also more serious than Solem's crime of uttering a "no account" check for $100.00. Solem, 463 U.S. at 279-281. Petitioner's offense is similar to the defendant's nonviolent offense of possession of more than 650 grams of cocaine in Harmlein, although the amount Petitioner possessed was less. Harmelin, 501 U.S. at 1005. Petitioner's crime is more serious than the defendant's crime of petty theft in Ewing, and the Supreme Court upheld the life sentence there. Ewing, 123 S.Ct. at 1186-1187. Further, Petitioner's offense is more serious than the defendant's crime of petty theft in Andrade. Andrade, 123 S.Ct. at 1166.

Furthermore, as the Supreme Court stated in Ewing, "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Ewing, 123 S.Ct. at 1189-1190. In the instant case, Petitioner was previously convicted of kidnapping and robbery. To the extent Petitioner argues that because the

two crimes occurred in a single incident and were prosecuted in the same case, they cannot constitute two strikes, it is without merit.  As noted by the Ninth Circuit in Ramirez v. Castro, "for purposes of a Three Strikes sentence, '[t]he fact that [the Petitioner's] prior convictions were adjudicated in a single proceeding does not mean that they constitute one prior conviction; two strikes can arise from one case."  Ramirez v. Castro, 365 F.3d 755, 758 n. 3 (9th Cir. 2004.) Accordingly, Petitioner's cruel and unusual punishment claim fails.

E.    Ineffective Assistance of Counsel

        Petitioner contends that his trial counsel was ineffective in the following respects: 1) not being present during his plea; 2) submitting incorrect information in support of a Romero motion, 3) not providing Petitioner with a copy of the probation report to review prior to sentencing; 4) failing to object to inaccuracies in the probation report; 5) failing to mention cruel and unusual punishment; and 6) failing to argue that Petitioner's two prior felonies were part of a single, indivisible transaction so as to constitute only one strike prior.

        The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

    1.   <u>Absence at Hearing</u>

As Respondent submits, the record does not support Petitioner's contention that trial counsel was ineffective for not being present during his plea. Review of the trial record reveals that Petitioner was represented by his counsel at every proceeding from arraignment through sentencing, absent only at Petitioner's plea hearing. More specifically, counsel was present at Petitioner's arraignments on July 20 and August 3, 2000 (CT 51-52), present at Petitioner's initial preliminary hearing continued to August 23 and again on September 21, 2000 (CT 52-53), and after Petitioner's plea, filed a petition asking the court to dismiss one or both of Petitioner's strikes (CT 30-35), and then appeared at the sentencing hearing to argue that motion (CT 39 et seq.). Counsel was absent only at his October 4, 2000, plea hearing, at which Petitioner entered into a "package" plea bargain with his co-defendant and fiancee Consuelo Martinez, where he was represented by Mr. Bell. On that occasion, Petitioner expressly and freely agreed to have Mr. Bell, counsel for co-defendant Martinez, "stand-in" for Mr. Torres. (CT 19.) Given

16

counsel's consistent representation both before and after Petitioner's plea, it simply cannot be said that counsel was deficient for having another attorney "stand-in" for him during Petitioner's plea hearing and Petitioner has not demonstrated otherwise.

In any event, Petitioner has not demonstrated any prejudice by counsel's absence at the plea hearing.  As the Court of Appeal found, Petitioner has not demonstrated any actual conflict by having "stand-in" counsel at his plea hearing, and thus Petitioner has not demonstrated prejudice and his claim fails.

      2.    <u>Sentencing Issues</u>

Petitioner contends that defense counsel was ineffective in filing his Romero motion to strike his prior convictions and arguing that his two strike priors were part of a single transaction.

As Respondent concedes, the conclusion portion of defense counsel's Romero motion argued mitigating factors from another case and was not revised to argue the mitigating factors in Petitioner's case.  (CT 35.)  However, defense counsel rectified that error at the sentencing hearing.  At that hearing, defense counsel argued that both strikes were incurred "back in . .. June of 1991 . . . in Los Angeles County," that Petitioner was represented by an attorney in that case, and that, due to "certain discrepancies," Petitioner heeded his attorney's advice and waived his right to a jury trial, proceeding instead with a court trial.  Defense counsel brought to light the fact that Petitioner was convicted of robbery and kidnaping, was sentenced to state prison for eight years, was paroled in 1995, and was discharged from parole in 1996.  Defense counsel argued that Petitioner had been "gainfully employed" since his parole period and had a child that he saw and supported financially.  Further defense counsel emphasized that Petitioner "was convicted of two serious felonies at the same time," arguing all of these mitigating factors sufficed to take Petitioner outside of "the spirit of the three strikes law."  (CT 40-42; see CT 32-33.)  The trial court explicitly stated that it ignored those portions of defense counsel's written motion that dealt with the unrelated case.  (CT 43.)

Further, defense counsel presented a vigorous argument at Petitioner's sentencing hearing regarding the consideration of his two strike priors.  In response to defense counsel's argument, the prosecution argued that even though the two convictions arose from the same incident, there

was no indication if there were separate victims.  (CT 42.)  The prosecution also pointed out that, in the present case, Petitioner possessed methamphetamine for sale which indicated that he was making money by means other than through gainful employment.  The prosecution argued that the "recency and serious nature" of the prior strike convictions kept Petitioner within the scope of the three strikes law.  (CT 42-43.)  In response, defense counsel argued that Petitioner was only 20 years old at the time of the strike convictions.  Also, he argued that while Petitioner's current conviction was serious in the abstract, it was not so serious as to constitute a strike.  Defense counsel argued that Petitioner "has attempted to become a constructive member of society" and that he should not be locked up for decades for possessing "less than a half pound of crank."  Defense counsel argued that a more reasonable sentence would be doubling the middle term, with a limitation on credits, that could be reached by dismissal of one of the prior strike convictions.  (CT 43-44.)

Further, as Respondent submits, ample evidence was presented to the trial court that Petitioner's two prior strike convictions arose from the same case.  Both the probation report and trial counsel's argument informed the court that the strikes were from the same case.  (CT 40-44.)  The prosecutor conceded that the strike convictions "rose from the same incident."  (CT 42.)  Thus, the trial court was well aware of the defense position that the strikes were the result of a single course of criminal conduct prior to sentencing Petitioner.

Moreover, California law supports the trial court's finding that prior convictions may be considered as separate strikes even if they arose out of a single course of criminal conduct, and Petitioner's claim to the contrary is without merit.  See Cal. Pen. Code § 667; People v. Fuhrman, 16 Cal.4th 930, 937-941 (1997); People v. Benson, 18 Cal.4th 24 (1998).  Petitioner has failed to demonstrate a reasonable probability that, had his defense counsel argued at his sentencing hearing a different way, "the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  As the Court of Appeal properly found, Petitioner

> failed to show a reasonable probability that the errors that were corrected at the probation and sentencing hearing led to a different result than if his counsel had not made those errors.

(Respondent's Exhibit E, at 9.)

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  The Court of Appeal properly found that the errors in Petitioner's Romero motion were corrected and not considered by the trial court.  (Exhibit E, at 8-9.)  Further, contrary to Petitioner' claim, the Court of Appeal found that counsel did argue that his two prior strikes arose from a single case at the sentencing hearing.  (Exhibit E, at 8-9.)

       3.    Probation Report

Petitioner alleges that counsel was deficient (1) by failing to provide him with a copy of his pre-sentence probation report and (2) by failing to object to the factual inaccuracies in the probation report.

As Respondent submits, neither of these allegations amount to deficient performance by defense counsel.  Although Petitioner claims that he was never provided a copy of the probation report, there is nothing in the record to indicate this is true.  Indeed, review of the record reveals that Petitioner was aware of the probation report prior to sentencing.  It is undisputed that he met with the probation officer in preparation of the report.  Further, at the November 20, 2000, sentencing hearing, the trial court specifically stated that it had reviewed the probation report and Petitioner's Romero motion.  (CT 40.)  When asked if there was any legal cause why Petitioner could not be sentenced at that time, Petitioner's defense counsel agreed there was none.  (Id.)  Further, as Respondent submits, other than Petitioner's current claim, there is no indication that the probation contained factual inaccuracies.  Petitioner's allegation that he never received his probation report and that the report contained factual inaccuracies are self-serving declarations that are wholly conclusory and unsubstantiated by the trial record.  Conclusory allegations do not warrant habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief).

Therefore, given the lack of evidence substantiating Petitioner's claim, there is no indication that his counsel was deficient with respect to the probation report.  More importantly, Petitioner cannot demonstrate that, even if he had received the report and informed the trial court

that it contained certain factual inaccuracies, his sentence would have been any different. Petitioner has failed to demonstrate any prejudice as a result of these allegations.

 4.   Cruel and Unusual Punishment

Petitioner contends that defense counsel was deficient for failing to argue that his sentence constituted cruel and unusual punishment.  As the Court has stated and found herein, Petitioner's sentence was not cruel and unusual pursuant to Supreme Court precedent.  Thus, the failure to make such an argument does not amount to deficient performance.  Further, Petitioner cannot demonstrate prejudice.  Even had defense counsel made such an argument, it was not reasonably probable that his sentence would have been any different.  Petitioner's counsel vigorously argued that the sentencing hearing that the trial court's proposed sentence was not appropriate in this case.  Defense counsel cited Petitioner's family responsibilities, his work history, the fact that he was only 20 years old when he suffered his prior convictions, and the minor nature of his current offense, amongst other factors, during the sentencing hearing.   The record does not reveal and Petitioner does not demonstrate that the trial court would have sentenced him differently had his counsel argued that, in addition to all of the above factors, the sentence also constituted cruel and unusual punishment.

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.   The petition for writ of habeas corpus be DENIED; and

2.   Judgement be entered in favor of Respondent.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections

shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after

service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to

28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

   **Dated:   August 22, 2005**          **/s/ Dennis L. Beck**
3b142a                        UNITED STATES MAGISTRATE JUDGE